WILLIAM A. N. HAMMETT, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

On the trial of an indictment for murder, where the evidence was not circumstantial, the judge charged the jury that if they found the prisoner guilty, they might recommend that he be confined in the penitentiary for life, and the jury found the prisoner guilty, but recommended that he be confined in the penitentiary for life:

*Held,* that the charge of the court was error, and the jury having found defendant guilty and recommended that he be imprisoned for life, un-

der the belief, from the judge's charge, that the effect of the verdict would be to avert the penalty of death, a new trial ought to be granted.

Criminal law.    Murder.    Verdict.    Jury.    Before Judge RICE.    Walton Superior Court.    August Term, 1873.

Hammett was placed upon trial for the offense of murder, alleged to have been committed on the person of one Peter Roquemore on July 25th, 1873.    He pleaded not guilty. The evidence as to the homicide having been committed by him was positive.    The sole question was, as to what grade it belonged.    The court instructed the jury that if they found the defendant guilty, they might recommend that he be confined in the penitentiary for life.    A verdict was returned accordingly.    The defendant moved for a new trial on account of error in the aforesaid charge.    The motion was overruled and he excepted.

J. J. FLOYD;  J. W. ARNOLD, for plaintiff in error.

EMORY SPEER, solicitor general, for the state.

McCAY, Judge.

Under the decision of this court in *Long's case*, 38 *Georgia*, 491, the charge of the judge was error.    We do not care to go over the argument.    The Code of 1873, by dropping the parts of the section judged to be obsolete under the constitution of 1868, does not present the section as it was passed. To give the section the meaning contended for would be to say that if the case be one of circumstantial evidence, the fate of the prisoner is wholly in the discretion of the judge, whatever the jury may do; since if the former case means, "when the conviction is upon circumstantial evidence," then it is wholly in the discretion of the judge.    We cannot believe such was the intention of the legislature.    There is the same high reason why the jury should have the right of recommendation in such cases as that the judge should exercise *his* discretion.    The whole clause, in our judgment, had in view

cases of circumstantial evidence. If the jury in such cases saw fit to recommend, the judge was bound; if they did not, he might still, in his discretion, lessen the penalty. The language of the section is not very exact, in any view of it: "In the former case *it* is discretionary with the judge; in the latter, it is not." "It" what? In either case the *sentence* is with the judge. The former case evidently meant, is the case where there is no recommendation, and the latter case where there is. To hold otherwise would be to say that, as we have said, if the conviction is founded solely on circumstantial evidence, the judge may or may not commute the sentence whatever they, the jury, may recommend; whereas, in all other cases, the recommendation of the jury is binding. This, we think, is absurd. As we said in Long's case, the key to the section is the old law and the object of *the Code.* So vital a 'change in the law as is contended for, is not to be supposed in a law passed under the circumstances of the Code, unless the change is patent and undoubted. Nearly four years have elapsed since the decision in the Long case, and the acquiescence of the legislature in the construction we then put upon the section indicates strongly that the construction is right, and accords with the legislative will.

Assuming the charge to be wrong, we think the prisoner entitled to a new trial. The conviction was clearly had under the belief that the recommendation would save his life. *Archer's case*, in 35 *Georgia*, 5, is exactly in point; and *Long's case*, in 38 *Georgia*, is not against this view. In Long's case, the jury refused to recommend, though the court told them they might do it. The charge did Long no possible harm. It was more favorable to him than the law warranted, and the jury, confident of his guilt, and the absence of any mitigating circumstance, thought he was not entitled to mercy. Who shall say the jury would have found *this* verdict had the judge not misled them?

It is said that the question of his guilt of the crime of murder is wholly independent of the opinion of the jury that he ought not to suffer death. Our law makes a juryman, who

has conscientious scruples on the subject of capital punishment, a good cause of challenge in cases where the penalty may be death.   Why?   Because the law wisely recognizes the fact that such opinions *do* affect the verdict.   And this is the law of human nature.   One of the old writers quaintly though wisely remarks: "He whose stroke is death should be very wary in striking."   And all experience shows that men of the highest virtue and conscientiousness, act upon the advice.   Is it not the demand, *not only of humanity*, but of sound sense, to deliberate more seriously, to weigh more cautiously, our acts, in proportion as their results are more important.   The law is full of just such principles.   Ordinary care and extraordinary care are familiar terms.   One is the care we take about trifles; the other the care we exercise in deciding important matters.   And even in matters of mere business, men are justified by law in dealing less solemnly with unimportant than with important things.

This jury deliberated on the evidence under the impression given them, intentionally, by the judge in his charge, that if they found him guilty, it did not follow that the prisoner would be sentenced to death.   Their verdict shows that they found him guilty with that understanding.   It is not necessary to read the affidavits to learn this; it is expressed in terms in the verdict, and was the law for their action, as laid down by the court.   Who shall say that the verdict would have been guilty had there been no such instructions?   Who shall say there would not have been more hesitation, more caution, in weighing the testimony?   We do not go into the evidence. From some of it, if worthy of credit, it is not clear that the offense is not manslaughter merely; and whatever a clear-headed, confident man might think of his capacity to come to an opinion of the truth of a fact, entirely independently of the consequences of his conclusion, we all know that this is not true of the average of men, and I doubt if it be true of any man.

In our judgment, the effect of this charge was to put the prisoner at a disadvantage—to lessen in the minds of the jury

that care, deliberation and caution, which it is not only their right, but their duty, to exercise in cases so important a conclusion ; and as the record itself shows that the jury thought he ought not to suffer death, we think it is plain that he was damaged by the charge.

Judgment reversed.